IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GREGORY DECKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-0438-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING FINAL DECISION OF COMMISSIONER OF SOCIAL SECURITY

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability benefits. For the following reasons, the Commissioner's decision to deny benefits is affirmed.

## I. BACKGROUND

Plaintiff was born on October 19, 1956 and alleges an onset date of March 6, 2001. R. at 76. He completed high school, obtaining his diploma through special education classes. R. at 471. Plaintiff has worked in a fast food restaurant, K-Mart, in concrete construction, and a deli. R. at 481-482.

A. Back Pain

Plaintiff began experiencing pain and underwent back surgery for a herniated disc in 1996. R. at 355. Plaintiff visited the emergency room four times in 2000 with complaints of back and wrist pain as a result of work-related injuries. R. at 210, 212, 214, and 216. While employed with Environmental Services at North Kansas City Hospital in 2001, Plaintiff fell off a loading dock, re-injuring his back, neck and right rib cage. R. at 161. Plaintiff was seen at Worker's Rehab Center for evaluation and

treatment following the injury. He complained of pain in his lower back, occasional headaches and balance disturbances. Plaintiff underwent an MRI on March 13, 2001, which revealed a small central disc protrusion in C3-4, mild central bulging in C6-7 and degenerative disc disease at C5-6. R. at 200. On March 14, 2001, Plaintiff underwent a Thoracic Spine MRI, which revealed a midline and slightly left paracentral disc protrusion in T3-4 and small midline disc protrusion in T4-5. R. at 202.

On April 26, 2001, Plaintiff met with Dr. James Zarr for treatment of his neck, left shoulder and back pain. R. at 175. Dr. Zarr's initial impression of Plaintiff's injuries included myofascial neck and lower back pain. R. at 177. He recommended Plaintiff continue on light duty work with no lifting greater than 25 pounds and prescribed Ultam for pain. He also recommended physical therapy three times a week for three weeks. R. at 177. Plaintiff returned to see Dr. Zarr for a follow-up visit on May 23. 2001. R. at 169. Plaintiff was prescribed Celebrex and released to half-day work with no lifting greater than 25 pounds and no bending, twisting, pushing or pulling. R. at 169. On June 19, 2001, Dr. Zarr declared Plaintiff had reached maximum medical improvement and released him to work full time with the following permanent restrictions: no lifting greater than 30 pounds, no overhead lifting greater than 30 pounds, no climbing or balancing, and only occasional bending, squatting, kneeling, crawling and overhead reaching. R. at 167.

On July 12, 2001, Plaintiff presented to the emergency room of North Kansas City Hospital for an evaluation of pain in his lower abdomen, which had been bothering him for about two weeks. R. at 190. Plaintiff was discharged, with the diagnosis of strain to his lower abdominal wall muscles. He was limited in his lifting and advised to take Advil. R. at 190. On July 19, 2001, Plaintiff again presented to the emergency room with complaints of abdominal pain. R. at 183. Examination ruled out the presence of a hernia and he was sent home with Demeraol and Vistaril for pain,. R. at 184.

A Residual Physical Functional Capacity Assessment was performed by medical consultant, Dr. Robert Hughes on September 10, 2001. R. at 285. Plaintiff's primary complaint at that time was cervical, thoracic, and lumbar myofascial strain. Dr. Hughes assessed Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or

walk for at least two hours and sit for about six hours in an eight-hour workday. Plaintiff's ability to push and pull were unlimited. R. at 286. Plaintiff was never to balance or climb ladders, ropes or scaffold and could occasionally stoop, kneel, crouch or crawl. R. at 287. Plaintiff was to avoid vibration, as it may aggravate his lumbar discomfort. R. at 289.

Between March 18 and May 20, 2003, Plaintiff underwent several MRIs at The Headache and Pain Center in Leawood, Kansas. Mild degenerative changes at the L4-5 level were noted, as well as postsurgical changes, and enhanced scar tissue surrounding the S1 nerve root. R. at 296. Dr. Harold Hess reviewed his final MRI scan, which revealed epidural fibrosis on the left at L5-S1 as well as a bony spur on the left at L5-S1. He did not recommend nuerosurgical intervention at that time. R. at 301.

B. Mental Health

On August 22, 2002, Plaintiff was discharged from a brief stay at Tri-County Mental Health Services, Inc., with a diagnosis of major depression, recurrent, moderate to severe with psychotic features. R. at 323-24. On January 6, 2003, Plaintiff again presented to Tri-County for an evaluation and assessment with Dr. Parimal Purohit. Plaintiff reported he was "nervous and afraid of his surroundings." R. at 315. His speech and motor activity were slightly decreased, he appeared distracted at times, looking into space when interacting with the treating physician. R. at 317. He was again diagnosed with major depression, recurrent with psychotic features and was assessed a GAF of 45 to 55. He was prescribed Zyprexa and Lexapro. R. at 318.

On June 16, 2003, Plaintiff presented to the emergency room as the result of a possible overdose. R. at 383. Plaintiff's wife noticed he was restless and sleepy prior to going to bed. The next morning, Plaintiff was found on the living room floor with slurred speech, almost unresponsive. R. at 383. During the consultation, Plaintiff's mood was euthymic and his speech was spontaneous, fluent and somewhat slurred. R. at 384. He was discharged without medication and diagnosed with Serotonin Syndrome with slurred speech and weakness of legs and Mood Disorder. R. at 382.

3

C. Administrative Hearing and Decision

On May 13, 2004, an administrative hearing was held in front of Administrative Law Judge Gary Lowe. R. at 468. Plaintiff appeared without an attorney. R. at 470. Plaintiff testified his biggest problem was constant back pain, originating from the left part of his neck to the lower back and left hip. R. at 473. At the time of the hearing, Plaintiff was taking Peripont, which helped reduce the pain, but left him a little light headed, drowsy and sluggish. R. at 474. Beyond back pain, Plaintiff testified he did not have any other physical problems which would preclude him from working. R. at 475. Plaintiff testified he was currently living with his mother and sometimes helped her with the laundry and meal preparation. R. at 475. Plaintiff testified he has relied on a cane to walk for about three years and could walk approximately four city blocks before he would have to stop because of pain. R. at 477.

The ALJ asked Plaintiff if he thought he would be able to perform a job which required alternate sitting and standing, never having to lift over 15 pounds, working at a table or bench, handling small objects, which involved no bending or stair climbing, and Plaintiff answered in the affirmative, explaining he wants to go back to work. R. at 487. Plaintiff was unable to answer a relatively simple math equation, and the ALJ determined Plaintiff was "not very good with numbers." R. at 471.

Dr. Lynn Curtis testified, via telephone, that Plaintiff has chronic lower back pain, exposed laminectomy at L5-S1, history of sciatica, history of chronic neck pain and history of major depression with some paranoid ideation and psychotic features. R. at 491. Dr. Curtis opined Plaintiff's mental condition would result only in mild limitations in his daily activities. R. at 492.

Vocational Expert Amy Salva appeared and testified at the hearing. R. at 496. The ALJ asked the VE to assume a hypothetical individual with the age, education and work history of Plaintiff, who experiences back and hip pain, has a non-severed depressive disorder, can sit or stand for an hour at a time, for a total of four each in an eight hour work day, has no limit on walking, stair climbing, or gripping, can occasionally bend, occasionally life an object weighing up to 20 pounds, frequently lift up to ten pounds, can carry such an object for up to 15 feet, should not crawl, kneel or climb. R.

4

at 498-99. The ALJ added such individual could read the newspaper but is "very, very poor" on numerical calculations. Further, such person has a non-severe depressive disorder, which mildly limits his daily activities but has experienced no episodes of decompensation of extended duration during the last 38 months. R. at 498. The VE testified under such restraints, Plaintiff could not return to any past relevant work. However, she testified there were positions that exist in significant numbers in the economy which Plaintiff could perform, including light, unskilled positions in assembly and packaging, and an information clerk, which is sedentary and unskilled. R. at 499.

The ALJ concluded Plaintiff has not performed any substantial gainful activity since March 6. 2001. The record indicates Plaintiff has the following severe impairments: chronic lower back pain, status post laminectomy at L5-S1, bilateral sciatica, chronic neck pain, and major depression with paranoia and psychosis. Plaintiff's back pain and left arm pain were determined to be moderate. The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. at 23. The ALJ noted Plaintiff entered the room with a slight limp and was using a cane. Further, he found Plaintiff's allegations of physical pain and testimony were reasonably consistent with the record, especially considering Plaintiff's stated desire to return to work. R. at 20. The ALJ determined Plaintiff could not return to his past relevant work, but was capable of performing light and sedentary work which exists in significant numbers in the regional and national economies. R. at 23.

## II. DISCUSSION

A. Standard

"Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that

fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

B. Mental Condition

Plaintiff argues the ALJ failed to properly consider his mental condition. The Court's review of the Record reveals sufficient evidence to justify the ALJ's determination in this case. Dr. Curtis testified at the hearing that Plaintiff's mental condition resulted in only mild limitations in his daily living. R. at 492. Plaintiff had discontinued any mental health treatment by the time of the hearing, even though he had prescription medication meant to alleviate his psychosis symptoms. R. at 478. The ALJ considered Plaintiff's testimony, his prior work record, information from Plaintiff's treating physician, Plaintiff's pain medication and daily activities when determining how much weight to afford Plaintiff's subjective complaints. Plaintiff testified he thought he would be able to perform a job which required alternate sitting and standing, never having to lift over 15 pounds, working at a table or bench, handling small objects, which involved no bending or stair climbing, and asserted his desire to return to work. R. at 487. The Court concludes the ALJ gave appropriate weight to Plaintiff's limitations due to his mental impairment.

C. Record

Plaintiff argues the ALJ erred by failing to fully and fairly develop the record because no mental health examination was ordered. However, the ALJ is only required to order additional medical evidence when the evidence as a whole is not sufficient to determine whether Plaintiff is disabled. 20 C.F.R §§ 404.1519a and 416.919a(2005). Plaintiff not only testified that his biggest problem was due to back pain, but further testified he felt able to return to work. R. at 473 and 487. Plaintiff had discontinued mental health treatment and much of his depression and anger was directed towards

6

his wife, from whom he was separated and only saw "every once and awhile." R. at 479 and 485. As stated above, Dr. Curtis determined Plaintiff's depression was not severe and resulted in only mild limitations. R. at 491-493. The record represents six visits to the Tri-County Mental Health Services. R. at 310-324. Plaintiff's last visit indicated he was only slightly depressed, his affect was appropriate and his medication worked well when taken regularly. R. at 310-312. Plaintiff admitted to depressive symptoms "at times," but stated no significant difficulty in carrying out his daily routines. R. at 310. There is sufficient evidence in the record to enable the ALJ to render a disability determination.

D. Vocational Expert

Plaintiff asserts the VE's testimony is flawed because the hypothetical question did not include Plaintiff's depression, psychosis or diminished intellectual functioning. However, the hypothetical question posed by the ALJ The hypothetical question posed by the ALJ included Plaintiff's educational background, indicating Plaintiff's numerical skills were "very, very poor," and non-severe depressive disorder. R. at 498. The hypothetical was complete with Plaintiff's established physical limitations, but excluded any further limitations regarding mental impairments, which were properly discounted by the ALJ. The ALJ, supported by the medical expert testimony, and record as a whole, found Plaintiff's mental condition caused only mild limitations and gave them proper weight in presenting the situation the VE. Based upon this information, the VE properly determined Plaintiff could perform light, unskilled jobs.
7

## III. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, JUDGE
DATE: March 26, 2007                   UNITED STATES DISTRICT COURT